[Civ. No. 6952. Second Appellate District, Division One.—August 26, 1932.]

SUDDEN LUMBER COMPANY (a Corporation), Respondent, v. BLUE DIAMOND COMPANY (a Corporation), Appellant.

546

O'Melveny, Tuller & Myers for Appellant.

Philip S. Ehrlich, Hunsaker & Cosgrove and Daniel M. Hunsaker for Respondent.

CONREY, P. J.—In this action the plaintiff recovered judgment in the sum of $20,000, found to be due as rent under a written lease executed and delivered by plaintiff to defendant, of described real property in the city of Vernon, in Los Angeles County, together with stated interest, attorney fees and costs. The defendant appeals from the judgment.

The lease was made for a term of ten years, beginning with December 11, 1926, and carried with it the right to excavate and to take from the premises sand and gravel. The rental was to be determined by the quantities of sand and gravel taken, at a stated price per cubic yard, with the understanding that the minimum payments for any calendar year should be $30,000. Among the contract provisions of the lease are the following: "It is understood that the above royalty shall be net to Lessor, and without the deduction of any charge for expense of operation or otherwise. Lessee shall not be required to pay any royalties until four months after the first day of the month succeeding the date of receiving the permit provided for in the next

succeeding paragraph, and such time as Lessee is prevented from excavating on said premises by inclement weather shall be added to said four months' period; provided, however, that all sand and gravel excavated during said period shall be charged to the Lessee and shall be settled for at the time of said first payment.

"3. Lessor shall forthwith seek a permit from the city of Vernon, state of California, whereby and whereunder the Lessee, either as Lessee of the owner or as its employee, shall be permitted to excavate in accordance with the terms hereof, and Lessee will render all reasonable assistance within its power in the obtaining of said permit and will share equally with the Lessor the actual expenses in obtaining said permit, but in the event that said permit is refused and it becomes necessary to institute legal action to enforce the granting thereof, all such action shall be taken by the Lessor in its own name and at its own expense.

"4. In the event that Lessor or Lessee is unable to gain permission, either by permit, or as an employee, or otherwise, to excavate said premises as above provided in paragraph 3, after using all due diligence to secure such right to operate, then and in such event the Blue Diamond Company will forthwith commence the minimum rental payments as above specified, or will forthwith quitclaim said premises to Lessor."

The controversy between the parties in this action turns upon the foregoing provisions of the lease. It was alleged by the defendant (paragraph II of first affirmative defense) that the plaintiff never, either by itself or through any other person, obtained any permit from the city of Vernon, or "any other commission from any source whatsoever" giving to the defendant permission to excavate either sand or gravel, or any other substance, from said premises, but on the contrary, that such permit was refused by the city of Vernon, and that plaintiff sought through the courts an order requiring the city to give such permit, which order was refused by the courts; and that no permit has ever been given to the defendant under or by virtue of which it was permitted to use said premises for the purposes provided under and by the terms of the lease. By separate affirmative defense it was claimed that by virtue of a transfer and assignment of the lease on the seventh day of

June, 1928, to one Philip S. Ehrlich, which transfer was made by the defendant with the written consent of the plaintiff, the defendant was released from the obligations of the lease, and that in fact no rental ever became due from the defendant.

In its decision the trial court found: "That it is true that plaintiff never, either by itself or any other person, obtained any permit from the said city of Vernon giving to the defendant the permission to excavate either sand or gravel from said premises. That an application for such a permit was filed on February 4, 1927, with the trustees of the said city of Vernon, and was denied by them on April 4, 1927; that plaintiff, in the name and on behalf of defendant, sought through this court an order requiring said city of Vernon to grant said permit; that the petition for said order was denied on April 26, 1927. That defendant was at all times advised of the aforesaid proceedings and of the respective dates of the same." The court further found, and it is conceded to be true, that the defendant has not paid any rent and did not at any time quitclaim said premises to the plaintiff. Respondent rests its right of action for the accrued rent claimed in the complaint upon paragraph four of the lease. Its position is concisely stated by counsel for respondent as follows: "Respondent based its complaint upon the proposition that when the permit to excavate was denied by the trustees of the city of Vernon, and when the superior court refused to grant a writ of mandate, and said proceedings were abandoned at the request of appellant, paragraph four of the lease compelled appellant to forthwith quitclaim all rights in the premises or pay rent, and that inasmuch as appellant did not quitclaim, the obligation to pay rent immediately accrued." (Page 7, respondent's reply to appellant's supp. brief.) Appellant, on the other hand (supp. brief, p. 12 et seq.), contends that the evidence is insufficient to prove that as of May 1, 1927, or as of any other date prior to January 1, 1928, the parties were unable, after completion of all proceedings required by the lease, to obtain the right to operate, and directs attention to the fact that at the end of 1927 litigation was still pending for the purpose of obtaining that right. It may be observed here that by agreement of date January 7, 1928, consented to

by both parties to this action, the lease was transferred to a third party, with a reservation that the transfer was without prejudice to any cause of action which respondent might have or claim against appellant by reason of any matter or things which appellant had done or failed to do prior to January 1, 1928, relating to said lease or to any terms and provisions thereof.

Comparing finding X with paragraph four of the lease and paragraph two of defendant's first affirmative defense, together with plaintiff's allegation that it had done all that was required of it under the lease, it is apparent that the finding does not completely cover the issue as presented by the pleadings. The finding declares that no permit was obtained from the city of Vernon; that an application for the permit was denied by said city on April 4, 1927; and that the plaintiff in the name and on behalf of defendant attempted to obtain from the superior court an order requiring that the city grant such permit, and that the petition for said order was denied on April 26, 1927. But as stated in the answer, the defense was not only that no permit was obtained from the city of Vernon and that on the contrary such permit was refused, but also that "plaintiff did seek through the courts an order requiring the said city to give such permit, which order was refused by the courts, and no permit has ever been given to this defendant under or by virtue of which it could or was permitted to use said premises, or any part thereof, for the purposes provided under and by the terms of said lease." It was further alleged that "no permit whatsoever has ever been obtained from any person or authority allowing this defendant to use said premises, as contemplated in said lease". The answer denied performance by the plaintiff, "other than the making of an unsuccessful attempt to get the permit *from the city of Vernon*, as required by said lease to be obtained by it, the lessor and plaintiff herein".

It should be remembered that the lease not only provided for the obtaining of a permit from the city, but the obligation of defendant to forthwith commence the minimum rental payments or forthwith quitclaim the premises to the lessor was conditioned upon the event "that lessor or lessee is unable to gain permission *either by*

*permit,* or as an employee, *or otherwise,* to excavate said premises as above provided in paragraph 3 after using all due diligence to secure such right to operate", etc. Before plaintiff could recover the rent claimed in this action, it was incumbent upon it to prove that it had made all reasonable efforts to gain the necessary permission. Without that proof the plaintiff would have no foundation to sustain the allegation of the complaint that plaintiff had kept and performed its obligations under the lease.

██ The court did not directly find that as of May 1, 1927, or at all, the parties were unable to gain permission either by permit or otherwise to excavate said premises. The specific finding is limited to the fact of application for the permit, denial of the application; application for an order of court, and denial thereof. In the light of the evidence, taken together with the pleadings, we are of the opinion that appellant should be sustained in its contention that the trial court failed to find upon the issue of inability of the parties to gain permission for appellant to excavate, either by permit or otherwise; and that, according to the evidence which was before the court, we cannot properly say that the court rightly could have found in favor of the respondent upon that issue. ██ Or, if we agree that this issue was covered by the general finding that plaintiff has performed each and all of the covenants, terms, provisions and conditions of said lease on its part to be kept and performed, then the evidence does not sustain the finding. If the court had decided, as under the evidence it should have decided, that the attempt to obtain a clear right to excavate for sand and gravel, on the leased premises was still an active and undetermined matter, and that there remained a reasonable prospect that by pursuing the pending litigation the required permission would be obtained, then it would follow that no rent had accrued for or during the period prior to January 1, 1928, and that the plaintiff's cause of action herein must fail.

██ The fact that the provisions of the lease did not absolutely call for a "permit" to be issued by authority of the board of trustees of the city of Vernon, but was open to the alternative of legal settlement of the right by litigation instituted against the city in the event of a refusal of the permit, is made plain not only upon a

reading of the lease itself, but also by the practical construction put upon it by the parties in their subsequent conduct. The evidence shows that in making the lease, the parties had in mind the fact that under certain existing ordinances of the city, if the ordinances were valid, the proposed excavations could not be made without first obtaining a permit from the city trustees for that purpose; that there was some danger or probability that the permit when applied for would be refused; that it might be necessary to apply for a writ of mandate to compel the issuance of the permit; that the court might refuse to issue the writ of mandate for some reason that would not be determinative of the ultimate question; and that finally it might be necessary to apply to some court of competent jurisdiction for a writ of injunction to prevent the city from interfering with the proposed excavation. The evidence leaves no doubt that this entire course of procedure was contemplated by the parties from the very beginning. In accordance with the plan of procedure, they applied for the permit, and when it was refused, they applied to the superior court for a writ of mandate. When in that proceeding the court sustained a demurrer to the petition for the writ of mandate and declined to issue the writ, these parties by mutual consent abandoned their prosecution of that action, apparently without waiting for any formal judgment to be entered against them. They then applied to the United States District Court for a writ of injunction to prevent the city of Vernon and its officers from enforcing against the Sudden Lumber Company and the Blue Diamond Company, or either of them, the ordinances in question relating to or concerning the said leased premises. Pursuant to an order of said court, a writ of preliminary injunction was issued on the first day of August, 1927. On the first day of February, 1928, that action was still pending. With its further progress we are not concerned here. It is enough to know that in accordance with the evidence above mentioned, it was established, beyond controversy, that although no formal permit for such excavation had been obtained from the city of Vernon, the effort to obtain such a permit or its legal equivalent was pending and undetermined. If the court had so found, the necessary conclusion of law would have been that the plaintiff was

not entitled to recover the rent claimed in this action. ■
Or if, on the other hand, the issuance· of the preliminary
injunction on August 1, 1927, was the equivalent of a
permit which would protect the lessee in proceeding with
the excavations, then under the terms of the lease no rent
would accrue until January 1, 1928, and the claim for
rent as accrued during the year 1927 could not be sustained.

■ Respondent contends that the grounds of appeal now
relied upon (and which have been considered herein) are
entirely different in theory from the actual defense pre-
sented at the trial; and that, therefore, appellant is not
entitled to have such new and different theory presented
in this court. There are, of course, many decisions which
declare the rule to which respondent refers. It is said that
"to permit a party who has tried his case wholly on a
certain theory, which theory was acted upon by the trial
court, to change his position and adopt a different theory
on appeal, would not only be unfair to the trial court, but
manifestly unjust to the opposing litigant". (2 Cal. Jur.
237.) In the case at bar, appellant did object to the evi-
dence offered by the plaintiff to show what was done in
bringing the injunction suit, and appellant at that time
claimed that there was nothing in the lease which pro-
vided for anything except a permit. But the court over-
ruled those objections, and allowed the plaintiff to intro-
duce the evidence. Presumably the plaintiff did this for
the purpose of showing that it had done all that was re-
quired of it by the terms of the lease. In relation to that
matter, therefore, the trial was conducted upon respond-
ent's own theory, and appellant is entitled to whatever may
result from carrying that theory to its proper conclusion.

The judgment is reversed.

Houser, J., and York, J., concurred.

A petition for a rehearing of this cause was denied by
the District Court of Appeal on September 23, 1932, and
an application by respondent to have the cause heard in
the Supreme Court, after judgment in the District Court
of Appeal, was denied by the Supreme Court on October
24, 1932.